UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ECHO JORDANA SCHWAN,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 3:25-CV-00591-JRK<br><br>JUDGE JAMES R. KNEPP II<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>REPORT AND RECOMMENDATION |

INTRODUCTION

Plaintiff Echo Jordana Schwan challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB) and supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry dated Mar. 25, 2025). For the reasons below, I recommend the District Court **AFFIRM** the Commissioner's decision denying DIB and SSI.

PROCEDURAL BACKGROUND

Ms. Schwan applied for DIB and SSI on May 4, 2023. (Tr. 181, 183). She alleged she became disabled beginning June 30, 2010 due to depression, mood swings, attention deficit disorder, carpal tunnel syndrome, and ankle and foot pain. (*See, e.g.*, Tr. 81). After the claims were denied initially and on reconsideration, Ms. Schwan requested a hearing before an administrative law judge. (Tr. 106, 111, 118, 122, 125). On April 8, 2024, Ms. Schwan (without the aid of a

1

representative) and a vocational expert (VE) testified before the ALJ. (Tr. 29-50). On April 25, 2024, the ALJ determined Ms. Schwan was not disabled. (Tr. 11-21). On February 13, 2025, the Appeals Council denied Ms. Schwan's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3; *see also* 20 C.F.R. §§ 404.981, 416.1481). Through counsel, Ms. Schwan timely filed this action on March 25, 2025. (ECF #1).

FACTUAL BACKGROUND

I.     **Personal and Vocational Evidence**

Ms. Schwan was 22 years old on her claimed disability date and 36 years old at the hearing. (*See* Tr. 64). She has a high school diploma. (Tr. 40). She has no past relevant work experience. (Tr. 36). Ms. Schwan has a date last insured of June 30, 2010. (Tr. 35).

II.    **Relevant Medical Evidence**[1]

Ms. Schwan has a long history of severe bilateral foot pain caused by flat-footedness that has persisted despite varied treatments including orthotics, wraps, and medication. (Tr. 960). The arches on her feet are collapsed "almost to a point where the medial ankle is touching the ground" and she has severe tendonitis. (*Id.*). Her range of motion is limited. (*Id.*). A June 2023 MRI revealed moderate tendinopathy and partial-thickness tearing of her tibialis tendon with mild-to-moderate tenosynovitis; mild degenerative changes in the midfoot and subtalar joints; moderate bone marrow edema in the medial malleolus; and moderate sprain of the talofibular, calcaneofibular, and deltoid ligaments. (Tr. 783). In August 2023, Ms. Schwan had corrective

---

[1] Because Ms. Schwan's arguments challenge the ALJ's analysis of her limitations when lifting and carrying (*see* ECF #10 at PageID 1210-15), I summarize the medical record only as it concerns that limitation.

surgery to repair the tendons in her foot. (Tr. 962, 964-66). After the surgery, Ms. Schwan reportedly was "doing good." (Tr. 962).

Ms. Schwan also has carpal tunnel syndrome and elbow pain. Nerve-conduction and electromyograph testing in March 2023 revealed "mild bilateral medial entrapment neuropathy at the wrist, worse on the left, and bilateral ulnar neuropathy at the elbow/cubital tunnels." (Tr. 906). A May 2023 orthopedic evaluation assessed carpal tunnel on both sides alongside cubital tunnel syndrome in both arms; Ms. Schwan was prescribed elbow splints to wear overnights. (Tr. 927).

### III.  Relevant Opinion Evidence

On July 14, 2023, state agency medical consultant Steve McKee, M.D., evaluated Ms. Schwan's medical records as part of the initial evaluation of her disability applications. (Tr. 61-63, 74-76). Dr. McKee could issue an opinion only for Ms. Schwan's SSI claim because there was insufficient evidence from before her last-insured date to opine on her DIB claim.[2] (Tr. 63, 76). Dr. McKee opined Ms. Schwan can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand or walk for about two hours of an eight-hour workday; can sit for six hours in a workday; must never climb ladders, ropes, or scaffolds; can frequently handle and finger bilaterally; and must avoid all exposure to workplace hazards like machinery or unprotected heights. (Tr. 61-63, 74-76). On October 27, 2023, state agency medical consultant W. Scott Bolz,

---

[2] Because a DIB claimant must establish she became disabled before the expiration of her insured status, medical evidence detailing the claimant's condition after she is no longer insured against disability is generally of little probative value unless it relates back to the claimant's condition while she was insured. *See Brown v. Comm'r of Soc. Sec.*, No. 5:24-cv-578, 2024 WL 4706709, at *3 (N.D. Ohio Nov. 7, 2024), *report and recommendation adopted*, 2024 WL 4881673 (N.D. Ohio Nov. 25, 2024).

3

M.D., reviewed updated medical records and affirmed the findings on reconsideration. (Tr. 87-89, 99-101).

IV.     **Relevant Testimonial Evidence**

Ms. Schwan proceeded with her hearing without the assistance of a representative. (Tr. 29). She explained that she cannot work because of her feet. (Tr. 40). As she describes it, she is extremely flat-footed and has two rods in her ankle. (Tr. 41). She had surgery on her left ankle in the fall of 2023. (Tr. 40). While her right foot is better than her left, the difference is not great. (Tr. 41). It is thus painful for her to walk, though the extent of her pain is variable, so sometimes she can walk for 30 minutes without stopping and sometimes she can walk for only five minutes. (*Id.*). For her, standing is about as painful as walking. (Tr. 45). Her foot pain sometimes interferes with cooking. (*Id.*).

Ms. Schwan has carpal tunnel syndrome in both her hands, though it is worse in her right hand. (Tr. 41-42). She can button a shirt and hold a pen, but if she bends her arm long enough, her hand will eventually go numb and her elbow will hurt. (Tr. 42).

The ALJ asked the VE to consider a person with characteristics that mirrored Ms. Schwan's residual functional capacity (RFC). (Tr. 47-48; *compare* Tr. 16). The VE opined such a person can perform work in the national economy and offered example jobs of small-parts sorter, document preparer, and address clerk. (Tr. 48). The VE noted there were 1,800 small-parts sorter jobs, 15,500 document preparer jobs, and 2,100 address clerk jobs in the national economy. (*Id.*). The ALJ did not ask about the available jobs in any particular regions of the country.

STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, which is "severe," defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his or her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to prove whether the claimant has the RFC to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine whether the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant deemed disabled. 20 C.F.R. §§ 405.1520(b)-(f), 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

At Step One, the ALJ determined Ms. Schwan had not worked since June 30, 2010, her claimed disability date. (Tr. 14). At Step Two, the ALJ identified "bilateral carpal tunnel and

cubital tunnel syndrome; left posterior tibial tendonitis/joint dysfunction; right foot degenerative joint disease; obesity; major depressive disorder; borderline personality disorder; and attention deficit hyperactivity disorder (ADHD)" as severe impairments. (Tr. 14). At Step Three, the ALJ found Ms. Schwan's impairments did not meet or medically equal the requirements of a listed impairment. (Tr. 14-16).

At Step Four, the ALJ determined Ms. Schwan's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except frequently lift and carry less than ten pounds; stand and walk for two hours; sit for six hours; push and pull as much as she can lift and carry; frequently operate foot controls bilaterally; frequently handle and finger bilaterally; never climb ladders, ropes, or scaffolds; frequently balance; never work at unprotected heights or around moving mechanical parts; perform simple routine repetitive tasks with no production rate pace; make simple work-related decisions; frequently interact with co-workers, supervisors, and occasionally interact with the general public; and tolerate few changes related to a routine work setting.

(Tr. 16) (cleaned up). The ALJ then concluded Ms. Schwan could perform work in the national economy, such as a small-parts sorter, document preparer, and address clerk. (*See* Tr. 20-21). Thus, the ALJ concluded Ms. Schwan was not disabled. (Tr. 21).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might

6

accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters*, 127 F.3d at 528. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an

accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## DISCUSSION

Ms. Schwan argues the ALJ erred at Step Five by not explaining how the sedentary occupational base in her region was eroded by her RFC for a limited range of sedentary work. (*See* ECF #9 at PageID 1210-12). She argues there are approximately 628 jobs[3] for the cited occupations of small-parts sorter, document preparer, and address clerk in Ohio and Social Security Ruling (SSR) 96-6p obliged the ALJ to ask the VE about the number of jobs Ms. Schwan could perform with her RFC within the regional occupational base. (ECF #10 at PageID 1214-15). The Commissioner responds that the ALJ must cite regional job numbers when the RFC significantly erodes the sedentary occupational base and it did not. (ECF #12 at PageID 1223).

A claimant's RFC is an assessment of the most he or she can do despite his or her physical limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Where a claimant's RFC is for less than a full range of sedentary work, SSR 96-6p provides guidelines for whether there is other work available in the national economy that a claimant can perform. *See* SSR 96-6p, *Titles II and XVI: Determining Capability to do Other Work–Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*, 1996 WL 374185 (July 2, 1996). "When there is a reduction in an individual's exertional or non-exertional capacity so that he or she is unable to perform

---

[3] Ms. Schwan emphasizes that she is not arguing that 628 jobs in Ohio meets the regulatory requirement for a "significant number" of jobs. (ECF #10 at PageID 1215).

8

substantially all of the [sedentary occupations], the individual will be unable to perform the full range of sedentary work: the occupational base will be 'eroded' by the additional limitations or restrictions." *Id.* at *4. But "the mere inability to perform substantially all sedentary unskilled occupations does not equate with a finding of disability" because there may be a number of jobs that exist in significant numbers that an individual could perform even after the sedentary occupational base has been eroded. *Id.* In determining the impact of an individual's limitations on the available sedentary jobs, "it may be useful to consult a vocational resource" such as the *Dictionary of Occupational Titles* or a vocational expert. *See id.* at *9. If an ALJ finds that the individual can perform other sedentary work despite their limitations, the ALJ "must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country." *Id.* at *5.

Ms. Schwan challenges the ALJ's assessment of how her ability to lift, carry, push, or pull weight erodes the sedentary occupational base. (ECF #9 at PageID 1210-12, 1214-15). The ALJ found Ms. Schwan can "perform sedentary work . . . except [she can] frequently lift and carry less than ten pounds." (Tr. 16). The ALJ analyzed the effect of Ms. Schwan's RFC on the available unskilled sedentary jobs as follows:

> To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative unskilled sedentary occupations such as,
> 
> - Small parts sorter (DOT 521.687-086), 1,800 jobs nationally
> - Document preparer (DOT 249.587-018), 15,500 jobs nationally
> - Address clerk (DOT 209.587-010), 2,100 jobs nationally

9

> \* \* \*
>
> . . . The representative jobs cited constitute a significant number of jobs existing in the economy as the vocational expert testified to the existence of approximately 19,400 jobs in the national economy that the claimant could perform, which demonstrates that the vocational base of work is not seriously eroded by her limitations.

(Tr. 20-21).

The ALJ's analysis was an individualized assessment of the effect of Ms. Schwan's limitations on the number of available sedentary jobs required by SSR 96-6p. Contrary to Ms. Schwan's assertion, the ALJ did ask the VE how the sedentary work base would be eroded due to the inability to lift 10 pounds on a frequent basis. (*See* ECF #10 at PageID 1212). The ALJ asked the VE about the available sedentary work for a hypothetical individual who, among other limitations, "could perform less than the full range of sedentary work" and lift and carry "ten pounds occasionally and less than ten pounds frequently."  (Tr. 47-48). This hypothetical matched Ms. Schwan's RFC. (*Compare* Tr. 47-48 *with* Tr. 16). The VE opined such a person can work as small-parts sorter, document preparer, and address clerk and cited numbers of available jobs. (Tr. 48). This complies with SSR 96-6p because the ALJ asked what kind of work Ms. Schwan could do if she could frequently lift less than 10 pounds and the ALJ relied on the VE's answer at Step Five. *See Garvin v. Astrue*, No. 3:10:498, 2011 WL 3205350, at \*9 (M.D. Tenn. July 26, 2011) (concluding SSR 96-6p was satisfied where the ALJ asked the VE about jobs the claimant could perform with postural limitations and relied on that answer), *report and recommendation adopted*, 2011 WL 3875748 (M.D. Tenn. Sept. 1, 2011). Thus, the ALJ complied with SSR 96-6p in assessing whether Ms. Schwan could perform other work in the national economy.

Ms. Schwan also argues that because the sedentary occupational base was eroded, the ALJ was obligated to discuss the number of jobs in Ms. Schwan's region, instead of citing only national

job numbers. (ECF #10 at PageID 1211-12). The Commissioner responds there was no significant erosion of the sedentary occupational base. (ECF #12 at PageID 1223).

The ALJ found Ms. Schwan can "perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except [she can] frequently lift and carry less than ten pounds." (Tr. 16). Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). Ms. Schwan discusses the impact of only her limitations in lifting and carrying and SSR 96-6p provides a guideline for how lifting-and-carrying restrictions can erode the occupational base:

> **Lifting/carrying and pushing/pulling:** If an individual is unable to lift 10 pounds or occasionally lift and carry items like docket files, ledgers, and small tools throughout the workday, the unskilled sedentary occupational base will be eroded. The extent of erosion will depend on the extent of the limitations. For example, if it can be determined that the individual has an ability to lift or carry slightly less than 10 pounds, with no other limitations or restrictions in the ability to perform the requirements of sedentary work, the unskilled sedentary occupational base would not be significantly eroded; however, an inability to lift or carry more than 1 or 2 pounds would erode the unskilled sedentary occupational base significantly. For individuals with limitations in lifting or carrying weights between these amounts, consultation with a vocational resource may be appropriate.

1996 WL 374185, at *6.

Ms. Schwan is correct that the ALJ did not clarify whether the limitation to frequently lifting and carrying less than ten pounds means she can frequently lift and carry slightly less than ten pounds or just one or two pounds. But the example in SSR 96-6p holds the unskilled sedentary occupational base will be eroded if the claimant is either "unable to lift 10 pounds" or unable to "occasionally lift and carry items like docket files, ledgers, and small tools throughout the workday." 1996 WL 374185, at *6. Ms. Schwan's RFC does not meet either condition.

11

First, the ALJ did not find Ms. Schwan is generally unable to lift 10 pounds. The RFC limits Ms. Schwan to lifting no more than 10 pounds at a time and frequently lifting less than 10 pounds. (*See* Tr. 16; *see also* 20 C.F.R. §§ 404.1567(a) and 416.967(a) (defining sedentary work as involving "lifting no more than 10 pounds at a time.")). Thus, Ms. Schwan can lift up to 10 pounds for less than one-third of a workday. *See* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("'Frequent' means occurring from one-third to two-thirds of the time."). Second, the ALJ did not find Ms. Schwan is unable to occasionally lift or carry articles like docket files, ledgers, and small tools. An RFC of sedentary work is a finding that a claimant can occasionally lift and carry those articles. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a). Thus, the unskilled sedentary occupational base was not necessarily significantly eroded.

SSR 96-6p then instructs ALJs that "consultation with a vocational resource may be appropriate" for individuals with limitations in lifting or carrying weights between the amounts in the examples. 1996 WL 374185, at *6. The ALJ asked the VE to consider a person with Ms. Schwan's RFC and the VE opined that such a person could perform other jobs in the national economy.[4] (Tr. 48). The ALJ then relied on that testimony in finding Ms. Schwan not disabled at Step Five. (Tr. 20-21). Ms. Schwan correctly points out that the specific jobs relied on by the ALJ have been criticized as obsolete and, after her hearing, the Social Security Administration issued guidance requiring more explanation before an ALJ may rely on those jobs to support a finding of no disability. *See Soc. Sec. Admin., Emergency Message 24027: Guidance Regarding the Citation of Certain Occupations at Step Five of the Sequential Evaluation Process* (Jan. 6, 2025),

---

[4] Again, Ms. Schwan expressly disclaims any challenge that those jobs do not exist in significant numbers in the national economy. (ECF #10 at PageID 1215).

12

http://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM. While the guidance does not apply because Ms. Schwan's hearing occurred before it was issued, I note the record contains testimony from the VE about how the cited jobs are currently performed and that the numbers of jobs are unaffected. (*See* Tr. 48-49).

The ALJ reasonably relied on the VE's testimony to conclude Ms. Schwan's limitations did not significantly erode the sedentary occupational base. Another court in this district concluded that "a restriction to occasional lifting of five pounds by itself, only minimally erodes the occupational base for sedentary work." *See Ortega v. Comm'r of Soc. Sec.*, No. 1:13-cv-2080, 2014 WL 3013863, at *17 (N.D. Ohio July 3, 2014). That the court in *Ortega* considered a more restrictive limitation than Ms. Schwan's (occasionally lifting five pounds compared to frequently lifting less than ten pounds) suggests the occupational base here is not significantly eroded. Ms. Schwan does not present any cases concluding otherwise. Thus, the ALJ properly found that the unskilled sedentary occupational base was not significantly eroded.

In sum, Ms. Schwan has not demonstrated an ambiguity in the RFC preventing the court from determining whether the unskilled sedentary occupational base was significantly eroded. The ALJ conducted an individualized assessment and consulted a vocational source to assess the impact of Ms. Schwan's lifting-and-carrying restriction on the available sedentary jobs in accordance with SSR 96-6p. Although the ALJ did not fully explain all the restrictions, there were jobs Ms. Schwan could perform with her RFC and another court in this district has found a more restrictive lifting-and-carrying limitation to only minimally erode the sedentary occupational base. I thus decline to recommend remand on this basis.

CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying disability insurance benefits and supplemental security income.

Dated: January 7, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

OBJECTIONS, REVIEW, AND APPEAL

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-cv-186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).